# In the United States District Court
# for the
# Western District of Texas

| | | |
|---|---|---|
| JOHN W. SWEET, JR. | § | |
| | § | |
| v. | § | SA-10-CV-1039-XR |
| | § | |
| INDIANAPOLIS JET CENTER, | § | |
| INC., ET AL. | § | |

**ORDER**

On this day came on to be considered Randy Keeker and Indianapolis Aviation Services, Inc. f/k/a Indianapolis Jet Center, Inc.'s[1] motion to dismiss for lack of personal jurisdiction, or in the alternative motion to transfer venue (doc. No. 8); David Edinger and the Comlux Defendants' motion to dismiss for lack of personal jurisdiction (doc. no. 9); Edinger and Comlux's motion to dismiss fraud claim for lack of specificity (doc. no. 9); Edinger's motion to dismiss for failure to state a claim (doc. no. 9); and Plaintiff's motion for leave to file first amended complaint (doc. no. 14).

**Background**

John Sweet alleges in his Original Complaint that effective August 28,

---

[1] Plaintiff sued Indianapolis Jet Center, Inc. d/b/a Indianapolis Aviation Services, Inc. Plaintiff refers to this entity as IJC. Defendant acknowledges that its corporate entity as changed names several times. It refers to itself as Indianapolis Aviation Services, Inc. f/k/a Indianapolis Jet Center, Inc. or IAS. The Court refers to this Defendant interchangeably as IJC or IAS.

2008, he entered into a six-year employment agreement with Indianapolis Jet Center, Inc. d/b/a Indianapolis Aviation Services, Inc., and agreed to serve as Vice-President of Avionics.[2] He further alleges that there was a written and verbal agreement that in the event that his employer was acquired by another company, his employment agreement would remain binding on the entity assuming control. He appears to then allege that at some unspecified date Comlux Aviation Services LLC and Comlux America, LLC acquired Indianapolis Aviation Services, Inc. He further alleges that at some unspecified dates he was demoted to Avionics Director and Avionics Proposal Analyst and his pay was decreased. He alleges the following causes of action and/or seeks the following relief: (1) declaratory judgment that the employment agreement binds the parties and modifies the traditional at-will employment relationship; (2) breach of contract; (3) recovery under quantum merit; (4) promissory estoppel; (5) fraudulent misrepresentation; (6) conversion of the agreed upon $120,000 salary; (7) tortious interference with contract; and (8) exemplary and punitive damages.

In his motion for leave to file a first amended complaint, Plaintiff seeks to supplement his factual allegations to address Edinger and Comlux's motion to dismiss fraud claim for lack of specificity (doc. no. 9). Plaintiff also includes

---

[2] The contract is dated August 27, 2008 and is between John Sweet and Indianapolis Jet Center, Inc. It states: "IJC has agreed to employ John for annual salary of $165,000/annually plus full IJC benefits. He works primarily from his home office and travels as needed. This will continue for the remainder of the 6 year term. In the event that IJC is partially or fully acquired by another company this agreement will remain in effect and be legally binding for John and the entity assuming control. If however they choose not to abide by the terms then the remaining contract will be purchased for the balance of the 6 year term...."

2

additional factual allegations, specifies which claims are asserted against which Defendants, and alleges further jurisdictional facts.

## Motions to Dismiss for Failure to State a Claim/Failure to Plead with Specificity

Plaintiff's motion for leave to file first amended complaint (doc. no. 14) is granted. Edinger and Comlux's motion to dismiss fraud claim for lack of specificity is dismissed as moot. Edinger's motion to dismiss for failure to state a claim is granted in part and denied in part. In the amended complaint, Plaintiff asserts claims against Edinger for breach of contract, quantum merit, promissory estoppel and conversion. Plaintiff fails, however, to allege sufficient facts to state these type of claims against an officer of Comlux in his individual capacity. Accordingly, the claims against Edinger for breach of contract, quantum merit, promissory estoppel and conversion are dismissed for failure to state a claim.

## Motions to Dismiss for Lack of Jurisdiction

### I. Personal Jurisdiction - In General

The plaintiff bears the burden of establishing personal jurisdiction over a non-resident defendant and that burden is met by making a prima facie showing. *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 854 (5th Cir. 2000). The Court must accept the plaintiff's uncontroverted allegations as true, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir.

2002) (citation omitted).

A federal district court sitting in diversity may exercise personal jurisdiction over a foreign defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).

The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a foreign defendant when "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Revell*, 317 F.3d at 470 (footnotes and internal citation omitted). There are two types of minimum contacts: contacts that give rise to specific personal jurisdiction and those that give rise to general jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

Specific jurisdiction exists when "the defendant has 'purposefully directed' his activities at residents of the forum ... and the litigation results from alleged injuries that arise out of or relate to those activities." *See Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations omitted); *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 n. 9 (5th Cir. 1992). The non-resident's purposefully directed activities in the forum must be such that he could reasonably anticipate being haled into court in the forum state. *Burger*

*King*, 471 U.S. at 474. Specific jurisdiction also requires a sufficient nexus between the non-resident's contacts with the forum and the cause of action. *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. 408, 414 n. 8 (1984).

General jurisdiction may be found when the defendant's contacts with the forum state are substantial, continuous, and systematic. *Helicopteros Nacionales*, 466 U.S. at 414-19. The "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). To confer general jurisdiction, a defendant must have a business presence in the forum state. *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999). Injecting a product, even in substantial volume, into a forum's "stream of commerce," without more, does not support general jurisdiction. *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375 (5th Cir. 1987); *accord Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 216 (5th Cir. 2000). Advertising and marketing through national media is insufficient, as are isolated visits to a forum. *See Johnston*, 523 F.3d at 612; *Alpine View Co.*, 205 F.3d at 218; *Bearry*, 818 F.2d at 376.

## II. Defendants' arguments regarding jurisdiction

### A. IAS

Although this company has not been dissolved, it alleges that it has not been actively engaged in any business since October 2008. IAS no longer has any facilities in which it does business. IAS is an Indiana corporation and its

5

principal place of business is in Indiana. It has never had an office in Texas. It does not have telephone facilities or bank accounts in Texas; has never owned or leased an office in Texas; has never maintained a registered agent in Texas; and has never maintained inventory in Texas. It states that "it did business with approximately five Texas customers over the years." IAS hired Plaintiff in August 2006 to manage the avionics department. Plaintiff was allowed to live in Texas and was allowed to work remotely. Plaintiff traveled to Indiana approximately once a month.

### B. Keeker

Keeker is a citizen of Indiana. He has never resided in Texas; has never owned real or personal property in Texas; has never had a post office box, bank account, or other tangible assets in Texas. He does not maintain a place of business in Texas.

### C. Comlux Defendants

Comlux the Aviation Group is a Swiss company, with its headquarters in Zurich. Comlux Aviation Services, LLC and Comlux America, LLC are Delaware limited liability companies, with their principal places of business in Indiana. None of the Comlux Defendants are registered to do business in Texas, do business in Texas, or have any facilities, operations, or banking accounts in Texas. Comlux America, LLC has one employee who works from his home in Texas.

### D. David Edinger

Edinger is a citizen and resident of Indiana, owns no property in Texas,

6

and does no business in Texas. He is the CEO of Comlux America, LLC and Comlux Aviation Services, LLC.

### III. Plaintiff's arguments regarding jurisdiction

It is unclear whether Plaintiff is asserting both general and specific jurisdiction. In Plaintiff's proposed First Amended Complaint (doc. no. 14) and Plaintiff's Response (doc. no. 15), it appears he is only arguing that general jurisdiction exists. However, since the Defendants brief the issue of specific jurisdiction as well, the Court will address both.

With regard to IJC, Plaintiff provides the following in his affidavit:

In March 2006, he was approached by Ed Harris, Vice President of Sales and Marketing for Indianapolis Jet Center, Inc. (IJC) about working for IJC. Ed Harris was located in San Antonio, Texas. The preliminary discussions with Mr. Harris took place in Texas and Plaintiff later flew to Indianapolis and met with Randy Keeker. Keeker promised him a higher salary than he was currently receiving and promised him that he could work from his home in Texas. Plaintiff initially rejected IJC's employment offer, but Keeker called again a few months later and he accepted IJC's offer of employment. He began employment with IJC in September 2006. Plaintiff alleges that he "regularly called client vendors on behalf of the company in Texas." IJC had clients in Houston, Dallas, Austin, San Antonio, New Braunfels and Temple, Texas. Plaintiff also states that other IJC employees called on Texas clients and prospective clients. Plaintiff alleges that another IJC employee did his IJC work from a location in San Antonio. He also alleges that he would "interface, meet and hire

7

engineering companies based in San Antonio, who would do work for the Company."

With regard to the Comlux Defendants, Plaintiff states the following:

When IJC was purchased by Comlux, the entity was known as Comlux Completions USA. Customers, however, were confused by the name and the entity was then known as Comlux Aviation Services and Comlux America. Plaintiff alleges that he began doing work for both companies.

> I continued to do the same work for these two companies that I did for [IJC]. All of the exact same clients, engineers, duties, etc. In addition to the previous employees that worked for [IJC], Comlux Defendants added a new employee, Chris Mason, who was based in Dallas and calling on all customers. Furthermore, Comlux Aviation Services entered into a partnership/joint venture with Bob Hurely Enterprises (BHE) to sell the use of a supplemental type certificate on challenger 601's, 604's, and 605's. BHE is based in San Antonio, Texas. BHE is in charge of the partnership. BHE and Comlux jointly financed the project in Texas. The STC application and approval went through the Dallas-Ft. Worth FAA.

**A.     Keeker**

Plaintiff states that in March 2006, he met with Keeker in Indiana and Keeker made certain promises regarding pay and work location. In August 2006, Keeker called Plaintiff's Texas home and made a second offer of employment. During his employment with IJC and while he was located in Texas, he would "consistently communicate with Mr. Keeker via telephone and email." When Plaintiff resigned in August 2008, Keeker telephoned him asking him to stay on "because he felt that the sale [of IJC] may not be consummated without me and promised me that he would put something together in writing and give me some security so that in case the buyout was consummated I would

8

be protected." The Employment Agreement prepared by Plaintiff was signed in Indiana.

### B. Edinger

Plaintiff states that in August 2009, Comlux Aviation reduced his salary and he complained to Edinger. Edinger allegedly told him that the cut would be temporary. "The conversations took place in Indiana and on the phone while I was in Texas." Plaintiff further states that In January 2010, Edinger summoned him to Indiana and informed him that his job title would be changed. He further states that in October 2010, he was summoned to Indiana by Edinger, who informed him of another change in his pay.

## IV. General Jurisdiction

Accepting the plaintiff's uncontroverted allegations as true, and resolving in his favor all conflicts, the Court finds that the plaintiff has established that general jurisdiction exists as to Indianapolis Aviation Services, Inc. f/k/a Indianapolis Jet Center, Inc., Comlux Aviation Services, LLC and Comlux America, LLC. Plaintiff asserts that he and other employees regularly call upon Texas customers and solicit prospective Texas customers. Assuming his allegations as true, Plaintiff has established that these defendants have a business presence in Texas and that the defendant's contacts with Texas are substantial, continuous, and systematic.

Plaintiff, however, has not established that there exists general jurisdiction as to Defendants Keeker, Comlux the Aviation Group, or Edinger.

9

## V. Specific Jurisdiction

As stated above, specific jurisdiction exists when "the defendant has 'purposefully directed' his activities at residents of the forum ... and the litigation results from alleged injuries that arise out of or relate to those activities." *See Burger King*, 471 U.S. at 472. The non-resident's purposefully directed activities in the forum must be such that he could reasonably anticipate being haled into court in the forum state. *Id.* at 474. Specific jurisdiction also requires a sufficient nexus between the non-resident's contacts with the forum and the cause of action. The Fifth Circuit has held that a single tortious act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted. *See Lewis v. Fresne*, 252 F.3d 352, 358-359 (5th Cir. 2001). However, a plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006).

### A. Keeker

In Plaintiff's first amended complaint he asserts the following claims against Keeker: breach of contract, quantum merit, promissory estoppel, fraudulent misrepresentation and conversion. Keeker's employment agreement was with IJC (not Keeker). No allegation has been made that IJC was the mere alter ego of Keeker. Plaintiff fails to establish how Keeker in his individual capacity "purposefully directed" his activities towards Plaintiff. Nor has Plaintiff established that Keeker, in his individual capacity, could reasonably

10

anticipate being haled into a court in Texas. In sum, this court does not possess personal jurisdiction over Keeker.

**B.  Comlux the Aviation Group**

Plaintiff asserts claims of breach of contract, quantum merit, promissory estoppel, fraudulent misrepresentation, conversion and tortious interference with contract against this Defendant. This Defendant was not a signatory to the employment agreement. The assets of IJC/IAS were not sold to this Defendant. Apparently this Defendant has been named as a party because it is the parent of Comlux America, LLC. Plaintiff fails to establish how Comlux the Aviation Group "purposefully directed" its activities toward Plaintiff. Nor has Plaintiff established that Comlux the Aviation Group could reasonably anticipate being haled into a court in Texas. In sum, this court does not possess personal jurisdiction over Comlux the Aviation Group.

**C.  Edinger**

In Plaintiff's first amended complaint he asserts the following claims against Edinger: breach of contract, quantum merit, promissory estoppel, fraudulent misrepresentation and conversion. Keeker's employment agreement was with IJC (not Edinger). Plaintiff fails to establish how Edinger, in his individual capacity, "purposefully directed" his activities towards Plaintiff. Nor has Plaintiff established that Edinger, in his individual capacity, could reasonably anticipate being haled into a court in Texas. In sum, this court does not possess personal jurisdiction over Edinger.

## IJC/IAS's Motion to Transfer Venue

Pursuant to 28 U.S.C. § 1404(a), this Defendant requests that this case be transferred to the Southern District of Indiana.

Section 1404(a) of Title 28 provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district or division where it might have been brought." Transfer under § 1404(a) is limited to transferee districts in which the action might originally have been brought. After determining that the suit could have been filed in the transferee venue, a transferor district court must weigh the parties' private interests in convenience and the public interest in the fair administration of justice. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

The party moving to transfer must persuade the Court that transfer would signify more than shifting inconvenience from one party to another. Specifically, the moving party must "clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *In re Volkswagen of America, Inc.*,, 545 F.3d 304, 314 (5th Cir. 2008) (*"Volkswagen II"*) (citing 28 U.S.C. § 1404(a)). "Thus when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id*. The Court considers a number of factors in determining whether transferring venue serves the convenience of the parties and witnesses as well as the interests of justice. The "private interest factors"

include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir.2004) ("*Volkswagen I*") (citing *Piper Aircraft*, 454 U.S. 235, 241 n. 6 (1981)). The Court also should consider "public interest factors" such as: (1) the administrative difficulties caused by court congestion; (2) the local interest in adjudicating local disputes; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems in conflict of laws. Id. Additionally, though it is not a distinct factor, the Court must consider the plaintiff's choice of forum as part of the § 1404(a) motion to transfer analysis. *Volkswagen II*, 545 F.3d at 314 n. 10.

## I. Whether the Case "Might Have Been Brought" in the Transferee District

A district court is one where the action "might have been brought" if it satisfies the statutory venue requirements set out in 28 U.S.C. § 1391. *Hoffman v. Blaski*, 363 U.S. 335, 354 (1960). Section 1391(b) makes venue in a diversity case appropriate in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is

13

situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391.

Plaintiff asserts that the Western District of Texas is the appropriate venue because a substantial part of the events or omissions giving rise to the claim occurred in San Antonio. Specifically, he asserts that IAS purposely committed fraud so it could be sold to Comlux, "for a profit, all based upon the retention of Plaintiff as an employee under fraudulent and false pretenses."

Defendant asserts that venue would be appropriate in the Southern District of Indiana. To the extent that it still exists, it claims it "resides" in Indiana. As noted earlier, although this company has not been dissolved, it alleges that it has not been actively engaged in any business since October 2008. IAS no longer has any facilities in which it does business. According to 28 U.S.C. § 1391(c), a corporate defendant resides in any judicial district where it is subject to personal jurisdiction, and a corporation is subject to personal jurisdiction at its principal place of business. Plaintiff could have brought this suit in the Southern District of Indiana pursuant to 28 U.S.C. § 1391(b)(1) since IJC/IAS still technically is located in the Southern District of Indiana.

## II. Private Interest Factors

### A. Relative ease of access to sources of proof

IAS argues that its corporate records are located in Indiana. It also argues that any inspection of the worksite would need to occur in Indiana.

Presumably, it means Comlux's worksite inasmuch as it previously asserted it no longer is doing any business. Comlux is not seeking transfer of venue. Plaintiff argues he worked in Texas for the most part. Since no evidence has been offered to demonstrate that the access to sources of proof would be easier in either Indiana or Texas, the Court finds that this factor is neutral.

**B. Availability of compulsory process to secure the attendance of witnesses**

This private interest factor applies to unwilling witnesses. This Court does not have the power to issue a subpoena on residents of Indiana. IAS/IJC identifies six witnesses (all residents of Indiana) who they believe have knowledge of relevant facts. Plaintiff does not respond to this argument, other than to state that a transfer of venue would pose a significant hardship on him. The Court finds that this factor weighs slightly in favor of venue in the Southern District of Indiana.

**C. Cost of attendance for willing witnesses**

When the distance between the existing venue and the proposed venue exceeds 100 miles, as it does here, the Fifth Circuit's 100-mile rule, as set out in *Volkwswagen I* and *Volkswagen II*, is applied. *Volkswagen II*, 545 F.3d at 317. According to the 100 mile-rule, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. *Id*. The San Antonio Division of the Western District of Texas is clearly less convenient to Defendants' witnesses than the Southern District of Indiana.

### III. Public Interest Factors

In discussing the public interest factors, Defendant asserts that the Southern District of Indiana is better equipped to handle this case as it is more familiar with Indiana law. Defendant asserts that Indiana law will likely apply to the employment agreement and related claims because the services rendered by Plaintiff (managing the avionics department) were to be performed in Indiana. Defendant also asserts that it is more appropriate to burden the citizens of Indiana with jury duty in an issue governed by Indiana law. Plaintiff does not address any of these arguments. Without additional briefing, the Court is reluctant to declare conclusively that Indiana law applies to this case. Because of this ambiguity, the Court finds that the factors of familiarity of governing law and avoidance of conflict-of-law, as well as the factor of local interest in resolving the dispute and jury burden, are neutral. The factor of court congestion is neutral.

IAS/IJC makes a strong argument that all witnesses in this case are Indiana residents. In addition, Indiana law may be applicable in this case. Finally, the Court has concluded that it lacks personal jurisdiction over Edinger, Keeker and Comlux the Aviation Group. Plaintiff is ordered to respond within ten days with additional briefing regarding the motion to transfer.

### Conclusion

Plaintiff's motion for leave to file first amended complaint (docket no. 14) is granted. Edinger and Comlux's motion to dismiss fraud claim for lack

16

of specificity (docket no. 9) is dismissed as moot. Edinger's motion to dismiss for failure to state a claim (docket no. 9) is granted in part and denied in part. Randy Keeker's motion to dismiss for lack of personal jurisdiction (docket no. 8) is granted. IAS/IJC's motion to dismiss for lack of personal jurisdiction (docket no. 8) is denied. David Edinger's motion to dismiss for lack of personal jurisdiction (docket no. 9) is granted. Comlux the Aviation Group's motion to dismiss for lack of personal jurisdiction (docket no. 9) is granted. Comlux Aviation Services, LLC and Comlux America, LLC's motion to dismiss for lack of personal jurisdiction (docket no. 9) is denied. IAS's motion to transfer venue (docket no. 8) will remain pending. Plaintiff is ordered to respond within ten days with additional briefing regarding the motion to transfer.

It is so ORDERED.

SIGNED this 19th day of May, 2011.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE